IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,    )
                             )
v.                           )         2:97-cr-349-JHH-PWG
                             )
JOHN COLEMAN.                )

## MEMORANDUM OF OPINION REGARDING ORDER GRANTING MOTION FOR REDUCTION OF SENTENCE

The movant, acting *pro se*, filed the above-styled motion on December 18, 2007,[1] to reduce his sentence pursuant to 18 U.S.C. § 3582 effective November 1, 2007 and made retroactive by USSG §1B1.10, effective March 3, 2008. The court has treated the motion for reduction in sentence as if filed on March 3, 2008, the first date defendant could gain the benefit of the retroactive aspect of the amendment.

In May 2007, the U. S. Sentencing Commission (U.S.S.C.) submitted a group of proposed amendments to the Sentencing Guidelines as they have done annually since 1987. One of these amendments, number 706, represented the U.S.S.C.'s attempt to mitigate the sentencing disparity for defendants convicted of crack cocaine offenses as opposed to powder cocaine offenses. In the absence of congressional action to amend the 100:1 ratio found in the Title 21 statutes, the

---

[1] At this point, the crack amendment had no retroactive application.

U.S.S.C. proposed a method to reduce the potential sentences by lowering the applicable guidelines for quantities of crack by two levels, thereby creating a ratio ranging from about 25:1 to about 80:1 within the Guidelines framework.

All of the proposed amendments, including the crack amendment, became effective on November 1, 2007. Then in December 2007, following a period of public discussion, the U.S.S.C. decided to make the crack amendment retroactive. The effective date for retroactive application of the crack amendment became March 3, 2008. The U.S.S.C. also amended Guideline § 1B1.10 to include the crack amendment (hereinafter referred to as "the amended policy statement"). As such, as of March 3, 2008, the crack amendment and amended policy statement apply to all relevant sentences, old and new. All of this was done pursuant to the U.S.S.C.'s authority found at 28 U.S.C. § 994(u) and 18 U.S.C. § 3582(c).

With that background, the court now turns to the current motion (Doc. #45) of John Coleman to modify his term of imprisonment under 18 U.S.C. § 3582(c)(2). The motion seeks the benefit of the crack amendment and the amended policy statement. The focus of the § 3582(c)(2) motion is the 160-months sentence imposed upon movant under Count 2 to be served concurrently with the

120 months sentence imposed upon him under Count 1. A short description of the charges is appropriate.

In November 1997, a grand jury returned a two count indictment against Coleman. Count 1 charged that from on or about October 21, 1997 Coleman, using a deadly and dangerous weapon, assaulted, resisted, opposed, impeded, intimidated, and interfered with Federal Agents performing their official duties, in violation of Title 18, United States Code, Section 111(a)(1) and (b). Count 2 charged that from on or about October 21, 1997 Coleman possessed with the intent to distribute in excess of five grams of a substance containing a detectable amount of cocaine base, or crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B). The defendant was found guilty by a jury under Counts 1 and 2. At sentencing the court found that the Count 2 offense involved 49.189 grams of cocaine base (crack).

While subject motion only seeks relief with regard to the Count 2 sentence, it cannot be properly considered without a full understanding of the factual background for Count 1. On October 21, 1997, at approximately 6:00 a.m., members of the Birmingham Division of the Violent Crime/Fugitive Task Force, along with Federal Bureau of Investigation Agents, were attempting to execute an arrest warrant on John Coleman at 9124 8th Avenue North in Birmingham, Alabama. All agents and members of the arrest team were wearing body armor

with "FBI" clearly marked on the front. A marked Birmingham, Police Department patrol car, with an officer inside, was parked in front of the residence. As a team approached the residence, gunshots were fired from a window inside the house, causing members of the arrest team to retreat behind cover and to return four shots. A Task Force member announced, through a PA system, the identity of the arrest team and ordered the occupants out of the residence. Evidence at trial indicated that when this occurred, Coleman fired no more shots, exited the house and was placed under arrest. He indicated to the arrest team that no one else was present inside the house. The team entered the residence to insure that no one else was inside. A room by room search uncovered no one else present. A 9MM Beretta semi-automatic handgun was found in a bedroom. The slide of the handgun was jammed with a live round precluding the slide from sliding forward into the battery. Four 9MM shell casings were also located in the bedroom, between the bed and the window. Also located within the residence were an AK-47 clone-style weapon and an Uzi-style weapon. Two "banana" type magazines were located in the bedroom where the 9MM Beretta was found. Coleman voluntarily admitted to the investigating Jefferson County Sheriff's Department personnel that he fired a weapon at the individuals attempting to gain entry into his residence, but he claimed not to know the individuals were law enforcement officers. He explained that two months earlier he had been involved in a shooting and he thought the individuals involved were returning to his house.

The following chart sets forth the application of the crack amendment to the instant case:

|  | Original Sentence | Retroactive Sentence Adjustment |
|---|---|---|
| **Total Offense Level** | 32 | 30 |
| **Criminal History Category** | II | II |
| **Imprisonment Range** | 135- 168 months | 108-135 |
| **Departure** | n/a | n/a |
| **Sentence Imposed** | 128 months assault charge and 160 months crack charge each count cc | |

The original sentence was very near the top of the applicable guideline range. That sentence included the maximum enhanced penalty of 120 months under 18 U.S.C. § 111(a)(1) and (b) for the forceable assault using a deadly weapon charged in Count 1. At the time of sentencing the court stated that it selected the upper end of the guideline range because of the "seriousness of the assault against law enforcement officers and the number of firearms in defendant's actual or constructive possession, making him an unusual danger to the community." It is fair to attribute only 40 months of the total sentence of 160 months to the 49.189 grams of cocaine base[2] defendant possessed with intent to distribute it.

---

[2] The court notes in passing that one additional gram of cocaine base would have required a minimum statutory sentence of 120 months.

In considering movant's current motion under 18 U.S.C. § 3582, the court is obligated under USSG § 1B1.10 and under Application Note 1(b)(ii) thereunder to

> ... consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment in determining: (1) whether such a reduction is warranted; and (2) the extent of such reduction, but only within the limits described in subsection (b).

Prior to review by the court of the March 13, 2008 Addendum (Doc. #47) to his § 3582(c)(2) motion, the court had no reason to be any less concerned with the danger defendant may pose to the community than it was at the time of imposing the sentence. The Addendum sets out extensive "self-help" improvement efforts and activities defendant has engaged in while incarcerated, including projects for the benefit of others. The prison SENTRY PROGRESS REPORT for defendant essentially confirms the information set out in the Addendum. For that reason, coupled with the fact that defendant will be under the court's supervised release for 60 months following release, the court concludes defendant will not pose a serious risk of danger to any person or the community if released within the next few months. Therefore, the court finds that he is eligible for consideration for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) and concludes the crack amendment applies to the circumstances of movant.

Therefore, in light of these considerations and after considering the factors set forth in 18 U.S.C. § 3553(a), this court hereby finds that the concurrent

160 month sentence under Count 2 should be reduced to a concurrent term of **135 months**. In so doing, the court finds that the movant has not over served the original sentence, and, thereby, specifically retains all options for re-sentencing the movant in the future event that he appears before this court pursuant to a petition for revocation of supervised release.  The 60-months supervised release term imposed at sentencing begins immediately upon movant's release from custody.

    A separate order will be entered.

    **DONE** this the ___3rd___ day of April, 2008.

_____
SENIOR UNITED STATES DISTRICT JUDGE